[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
Plaintiff Central Connecticut Acoustics, Inc. brings this action to collect a debt claimed to be owed by defendant Richard Pandora. The debt concerns charges incurred by Mr. Pandora in his capacity as a general contractor for work done on a ceiling installation for one of his accounts. Plaintiff claims the amount owed is $3,697.06 on an original price of $6,897.06. CT Page 1176 Mr. Pandora claims the agreed price was $4,200.00. Mr. Pandora has paid $3,200.00. He held back $1,000.00 for work he claims was substandard and not corrected.
Defendant Severina Pandora is the owner of the real property which plaintiff attached to secure its claim. Plaintiff alleged a fraudulent conveyance in its request for a prejudgment remedy.
Defendants have filed a special defense that a "third person" was involved, and that the "third person" has been paid in full. Defendant's counterclaim alleges abuse of process and a violation of CUTPA.
Plaintiff originally attempted to commence this lawsuit in conjunction with an application for prejudgment remedy. Apparently, the sheriff did not properly return the papers to court after filing an attachment for $5,000.00. The land records reflect the attachment, although the court file does not, for, as noted, the papers were not returned to court. With the $5,000.00 attachment still on the land records, plaintiff sought another prejudgment remedy which was granted in the amount of $4,500.00. The land records presently reflect this attachment as well. Said land records presently reflect $9,500 in attachments against the property of Severina Pandora to secure the $3,697.06 plaintiff claims is owed by Richard Pandora. The lis pendens for each attachment alleges a fraudulent conveyance. Plaintiff dismisses this chain of events in its brief by speculating that the Pandoras "probably" knew the papers for the first attachment had not been returned to court and were of no force and effect. Plaintiff also claims that the errors of the sheriff put the attachment outside the chain of title.[1] See plaintiff's brief pp. 13 and 15.
The first issue to be addressed is whether plaintiff is entitled to recover on its claim for monies owing. As noted, the debt was incurred when Mr. Pandora engaged plaintiff to install a ceiling. Mr. Pandora testified that the owner of the building where he was working as a general contractor wanted the work done very quickly. With this in mind, Mr. Pandora decided to "sub" the ceiling work rather than do it himself. He had seen some work being done at a job site nearby. He stopped one day and asked to have someone see him about the ceiling. He was then visited by plaintiff's employee, Mr. Carroll. He told Mr. Carroll what he needed. According to Mr. Pandora, Mr. Carroll agreed to do the job for $4,200.00. Shortly thereafter, plaintiff's employees did the work. Mr. Pandora testified the job was done in an unworkmanlike manner. Some of the many problems cited by Mr. Pandora were that the ceiling buckled, did not have enough supporting hooks and had bricks on top of the panels to hold them down. The most significant problem, however, was the poor layout CT Page 1177 of the ceiling, which resulted in small pieces showing in visible areas. Defendant's Exhibits 03-05 illustrate this problem. Plaintiff's witness, Mr. Gatcomb, admitted the error, although he attributed the poor layout to Mr. Pandora's "foreman-carpenter."
Because of his complaints regarding the work, Mr. Pandora paid $3,200.00 to Mr. Carroll, indicating he was withholding $1,000.00 until the work was corrected. The work was not corrected, and Mr. Pandora made no additional payments. Mr. Pandora testified he did not realize he was dealing with anyone other than Mr. Carroll, who did not mention Central Connecticut Acoustics. The first time Mr. Pandora heard the company name was when he wrote the check.
In support of their claim, plaintiffs put a "proposal" in evidence. Plaintiffs' Exhibit 1. Plaintiff's witnesses admitted this document was not signed by Mr. Pandora. Warren Gatcomb testified that he supervised the job for plaintiff. He admitted that the lay-out was unorthodox, but, as previously noted, claimed that Mr. Pandora's "carpenter-foreman" laid it out. He further admitted the grid was buckled. Mr. Pandora testified that he did not have anyone else on the job with him except his wife's younger brother, Michael Gagliardi, who worked as a laborer. Mr. Gagliardi testified that he was only fifteen in 1985. This being the case, it is not credible that plaintiff's agent could have mistaken Mr. Gagliardi for a "carpenter foreman."
This court credits the testimony of Mr. Pandora insofar as the agreement for the work was made quickly and informally with Mr. Carroll without Mr. Pandora's knowledge that Mr. Carroll was an agent of Central Connecticut Acoustics. Further, the evidence supports Mr. Pandora's claim that the work was done in a workmanlike manner, and was not corrected.
Plaintiff claims that defendant Richard Pandora's conveyance of his interest in his home to his wife was fraudulent. Said conveyance was made on the same day the house was purchased. Defendant Severina Pandora testified that it was always intended that the property should be in her name, as the purchase was accomplished through a $40,000.00 gift from her parents. Plaintiff argues that this conveyance rendered Mr. Pandora insolvent. The debt claimed herein did not arise until long after this conveyance.
The court is aware that a conveyance may be fraudulent even as to subsequent creditors if a debtor is rendered insolvent thereby. O'Neill v. Kilduff, 81 Conn. 116, ___ A. ___. The case law which has developed around this proposition concerns fraudulent conveyances which rendered debtors unable to pay the debt at issue. It is ludicrous to suggest that Mr. Pandora was CT Page 1178 unable to pay the balance claimed by plaintiff. Plaintiff called defendants' banker, Carl Harris, as a witness. Mr. Harris testified that Mr. Pandora is not insolvent, nor has he been insolvent during the period in question. Although the bank had required defendants to put $9,500.00 on deposit to cover plaintiff's liens prior to granting a $100,000 loan, the bank has recently released the $9,500. Defendants had reduced the balance on this $100,000 home equity loan to approximately $9,000 by 1988. There is no evidence to suggest that Mr. Pandora was rendered unable to pay plaintiff's bill by reason of the transfer to his wife. This is underscored by the fact that the record reflects defendants have paid more to their attorney to date than the full amount of plaintiff's claim.
There was much testimony regarding the attachment at trial. Ironically, no one appears to have noticed that neither attachment was valid from the outset. In reviewing the file in connection with writing this decision, the court notes that the attachment which was returned to court authorizes the sheriff to ". . . attach to the value of $4,500 the real property of Richard Pandora . . ." (emphasis added). The sheriff's return recites that he has attached ". . . all of the right, title and interest of: Richard Pandora and Severina Pandora. . . ." Even assuming a fraudulent conveyance, the plaintiff had to obtain the authority of the court to attach the property of Severina Pandora. This it did not do.
The court finds that the events that transpired herein amounted to an abuse of process.
 "Abuse of process is the misuse of process regularly issued to accomplish an unlawful ulterior purpose. The gravamen of the complaint is the use of process for a purpose not justified by law. The distinction between malicious prosecution or vexatious suit and abuse of process as tort actions is that in the former the wrongful act is the commencement of an action without legal justification, and in the latter it is in the subsequent proceedings, not in the issue of process but in its abuse."
 Schaefer v. O.K. Tool Co., Inc., 110 Conn. 528, 532, 148 A. 330 (1930).
There is nothing inherently unlawful in commencing an action for a claim of monies owed. In the present case, however, the actions taken by plaintiff subsequent to the filing of the lawsuit constituted abuse. Plaintiff alleged a fraudulent conveyance without probable cause and proceeded to attach the CT Page 1179 property of Severina Pandora absent any authority from the court. "Examples of abuse of process would be the attachment of property for more than a writ authorizes. . . ." Wright FitzGerald, Conn. Law of Torts 163. Here, the writ did not authorize any attachment against the property of Severina Pandora.
Defendants make a bare allegation of a CUTPA claim in their special defense. They cite no authority in support of this claim in their brief. Thus, this claim is deemed abandoned. See State v. Ramsundar, 204 Conn. 4, 16, 526 A.2d 1311 (1987).
Damages
Severina Pandora gave testimony concerning emotional distress. This counterclaim cannot succeed on either the pleadings or on the evidence presented. The letter from her physician merely states that she had complained of upset due to a "lawsuit." As noted above, plaintiff was entitled to an adjudication of the dispute over monies owed. More evidence was necessary to sustain a claim for punitive damages stemming from emotional distress.
Exemplary damages are recoverable for abuse of process only if malice is shown. The record before the court shows more blundering than malice. Nevertheless, compensatory damages are warranted. Defendants are hereby awarded said damages in the amount of attorney's fees incurred in defending this action. Based on three days of trial in addition to the $3,600.00 expended pretrial, this court finds the sum of $6,800 to be a reasonable award. In addition, costs will be taxed to the Defendant. No further damages are warranted insofar as the attachments were void ab initio.
The evidence does not support plaintiff's claim that the agreed price was more than $4,200.00. Moreover, it was reasonable for Mr. Pandora to withhold partial payment for the admitted errors which were not corrected.
Accordingly, judgment may enter for defendants on the complaint, and on their counterclaim for abuse of process. Judgment may enter for plaintiff on the counterclaim for a CUTPA violation. Assuming a claim for emotional distress was properly set forth in the counterclaim, judgment may enter for plaintiff on this claim.
DUNNELL, J.